## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN CHEMICAL SOCIETY
1155 Sixteenth Street, N.W.
Washington, DC 20036

        Plaintiff,

   v.

ENTERPRISE TECHNOLOGY SERVICES
GROUP, LLC
9749 Goodluck Road, Building 6
Seabrook, MD 20706

SERVE:
National Registered Agents, Inc.
386 Park Avenue
Baltimore, MD 21201

and

NEKOL BELL PETERSON
1839 Barrington Court
Mitchellville, MD 20721

        Defendants.

Civil Action No.: _____

## COMPLAINT

Plaintiff the American Chemical Society, by and through its undersigned attorneys, for its complaint herein alleges as follows:

### NATURE OF THE ACTION

1.      This is an action to recover actual, compensatory, exemplary, and other damages, and all other relief which this Court deems just and proper, caused by defendants' fraudulent and tortious conduct in violation of federal statutes and the common laws of the District of Columbia.

2.      This action states a claim against the individual defendant for operating and maintaining an enterprise engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).  The predicate acts this federal violation is founded upon are criminal mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, respectively.  This action also states claims against one or both defendants for breach of fiduciary duty, fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and conversion.

## PARTIES

3.      The American Chemical Society (hereinafter referred to as "ACS") is a federally chartered nonprofit scientific and education organization with its principal place of business located at 1155 Sixteenth St., N.W., Washington, D.C. 20036.  *See* 36 U.S.C. §§ 20501-20506.  ACS has more than 160,000 individual members at all degree levels and in all fields of chemistry and chemical engineering.  Since its founding in 1876, ACS has been actively involved in the science, education, and public policy arenas.  ACS advances scholarly knowledge, professional services and support, and provides a broad range of opportunities for peer interaction and career development.

4.      Enterprise Technology Services Group LLC (hereinafter "ETSG") is a limited liability corporation incorporated or registered in the state of Maryland and which engages in interstate commerce by selling and performing technology solutions services to clients outside Maryland, including in the District of Columbia.

5.      Nekol Bell Peterson ("Peterson"), a.k.a. Nekol Bell-Peterson, a.k.a. Nekol Bell, a.k.a Nekol Lachele Bell, is an individual who resides at 1839 Barrington Court, Mitchellville, Maryland, 20721.  At all relevant times, Peterson was an employee, agent, and fiduciary of ACS entrusted with the procurement and administration of software consulting

services to provide support and maintenance of ACS's financial accounting system. Peterson is the owner and incorporator of ETSG. At times pertinent to this complaint, Peterson facilitated, materially participated, and actively engaged in the fraudulent and unlawful conduct alleged herein.

## JURISDICTION AND VENUE

6.      Jurisdiction in this action is predicated upon 28 U.S.C § 1331 and 18 U.S.C §§ 1964(a) and (c).

7.      Venue for this action is predicated upon 18 U.S.C §§ 1965 and 28 U.S.C. §§ 1391(b) and (c). ACS's principal place of business is in the District of Columbia, defendant Peterson committed, in part, the alleged tortious and criminal actions in the District of Columbia, and defendant ETSG markets, sells, and transacts business in the District of Columbia, including contracting to perform software support services for ACS. In addition, nearly all of the events giving rise to this complaint occurred in the District of Columbia.

## BACKGROUND

8.      In February 2005, ACS hired Peterson as a Project Lead in the finance department. Peterson was responsible for, among other things, the implementation, maintenance, and upgrade of ACS's accounting software programs.

9.      To carry out her employment responsibilities, Peterson was entrusted with discretionary authority to hire information technology consultants to provide on-going technical support services for ACS's financial accounting systems. Peterson was responsible for negotiating and administering consulting contracts, and for monitoring and approving all time worked by such consultants, including reviewing, verifying, and approving hours and amounts invoiced by the consultants to ACS.

10.    On or about November 7, 2005, Peterson entered into a contract on behalf of ACS with Enterprise Technology Services Group, or ETSG, to provide software support and maintenance services for ACS's "PeopleSoft" accounting software program. The duration of the contract was November 11, 2005 through December 31, 2006. Payment for ETSG services was agreed at $100.00 per hour. The contract required ACS to pay ETSG for "services … performed."

11.    Peterson signed the contract on behalf of ACS and an individual named Audrey McLaren signed the contract on behalf of ETSG.

12.    Upon information and belief, Ms. McLaren is an information technology consultant without any prior association or relationship to ETSG. Ms. McLaren was to perform "PeopleSoft" consulting services for ACS. Upon information and belief, Peterson told Ms. McLaren that ETSG would handle billing and payroll/tax matters and that Ms. McLaren would receive payment for her services directly from ETSG. The arrangement provided that ETSG would pay Ms. McLaren an amount between $60 and $65 per hour. Ms. McLaren's hours would be tracked using time sheets, which were to be submitted to Peterson on a weekly basis.

13.    When submitting the contract to ACS, Peterson ensured that no Form 1099 would be issued to ETSG.

14.    Ms. McLaren was the only ETSG contractor working on ACS's "PeopleSoft" accounting program during the period relevant to this complaint, and she performed no other services for ACS at any time. Pursuant to the terms of the contract, Ms. McLaren began her work at ACS on November 11, 2005.

15.    ETSG was incorporated or registered in Maryland on December 8, 2005 by Peterson herself, who, upon information and belief, is the sole signatory for ETSG's accounts.

16.     Beginning around December 2005, Peterson manipulated ETSG and its contract with ACS to repeatedly and continually defraud ACS. Peterson created ETSG and used ETSG's corporate structure for the purpose of defrauding ACS and breaching her fiduciary duties to ACS. By controlling, managing, and participating in ETSG's affairs and operations, Peterson embarked upon three specific schemes to fraudulently appropriate money from ACS for her own personal use and profit.

17.     In the first scheme, Peterson deliberately concealed all weekly time sheets submitted by Ms. McLaren and drafted in their place false time sheets that contained an inflated number of hours for each relevant week. Peterson then generated invoices to accompany the fabricated time sheets and, using her authority as Project Lead, approved the invoices on behalf of ACS. Peterson presented the invoices to accounts payable in such a manner as to represent that the invoices were true and accurate and to knowingly disguise the fraud. Unaware of the fraud, and having no reason to disbelieve Peterson, ACS paid the invoices by check and delivered the payments to ETSG through the U.S. mail. This hour inflation scheme occurred no less than 30 times throughout the course of the contract, at a substantial cost to ACS, and lasted from at least December 2005 up to and including January 2007.

18.     In the second scheme, Peterson repeatedly double-billed ACS for a single ETSG service. Peterson accomplished this by deliberately generating multiple ETSG invoices and staggering their submission to accounts payable over the course of the contract. Peterson personally approved the invoices on behalf of ACS and presented the invoices to accounts payable in such a manner as to represent that the invoices were true and accurate, and to knowingly disguise the fraud. Unaware of the fraud, and having no reason to disbelieve Peterson, ACS paid the invoices by check and delivered the payments to ETSG through the U.S. mail. This double-

billing scheme occurred no less than 10 times throughout the duration of the contract, at a substantial cost to ACS, and lasted from at least December 2005 up to and including January 2007.

19.    In the third scheme, Peterson generated, approved, and submitted invoices on behalf of ETSG for services that were never performed.  Each of these invoices billed large quantities of phantom hours never worked, some exceeding actual work performed by as much as 40 additional hours, or one full work week.  As with the other ETSG invoices, Peterson presented the invoices to accounts payable in such a manner as to represent that the invoices were true and accurate, and to knowingly disguise the fraud.  Unaware of the fraud, and having no reason to disbelieve Peterson, ACS paid the invoices by check and delivered the payments to ETSG through the U.S. mail.

20.    Upon information and belief, all payments made to ETSG by ACS as a result of Peterson's multiple schemes were deposited into ETSG's financial accounts.  As the sole signatory for these accounts, Peterson had personal and exclusive access to ETSG funds.

21.    Upon information and belief, Peterson withdrew funds from ETSG's accounts and transferred the funds to herself and to her family living out of state, for her personal use and the use of her family.

22.    Upon information and belief, ETSG is an alter ego of Peterson, and Peterson is an alter ego of ETSG, in that Peterson now and at all relevant times has completely dominated and controlled the assets, operations, activities, and business affairs of ETSG, failed to observe important corporate formalities, and used the assets of ETSG for personal affairs and purposes, as if those assets belonged to Peterson personally, to such an extent that any adherence to the fiction of the separate existence of ETSG as a person or entity distinct from Peterson would permit the abuse of a corporate or similar privilege of limited liability, if any, and would promote

injustice by allowing Peterson to evade liability or veil assets that should in equity be used to satisfy the judgment sought by ACS.

23.     In furtherance of Peterson's multiple schemes to defraud ACS, Peterson caused certain writings, telephone communications, and e-mail messages to be disseminated to ACS and other persons concerning ETSG, ETSG's contract with ACS (and its performance therein), and ETSG's invoices.  These persons include, but are not limited to, Ms. McLaren, Matice Aaron Hunt, and David Smith, Sr., the latter two whom Peterson represented to ACS were corporate executives of ETSG.

24.     In furtherance of Peterson's multiple schemes to defraud ACS, Peterson caused an e-mail message to be sent from Mr. Smith regarding ETSG and its contract with ACS. Upon information and belief, the source of the e-mail message traces back to Peterson's own e-mail account.  This constitutes an additional fraud upon ACS in that Peterson devised e-mail messages from other persons to create the illusion that she did not have a corporate relationship with or financial interest in ETSG.

25.     Peterson knew or should have known that she held a significant position with ETSG, including a significant financial interest in ETSG, and that her position and financial interest would be of great importance to ACS in the management of its affairs.  Peterson also knew or should have known that ACS's policies prohibited self-dealing and conflicts of interest among employees, and that a conflict of interest existed for Peterson given her dual roles with ACS and ETSG, a conflict she deliberately failed to disclose to ACS, to ACS's detriment and disadvantage.

26.     In an attempt to further conceal her fraudulent schemes, Peterson made numerous false representations.  Peterson represented to ACS that Ms. McLaren submitted her

time sheets to someone at ETSG other than Peterson. This representation was false, as ACS subsequently learned that Ms. McLaren submitted her time sheets directly to Peterson.

27. Peterson also represented to ACS that, at all relevant times, three additional ETSG consultants other than Ms. McLaren were working for ACS. This representation was false, as Ms. McLaren was the only ETSG consultant who ever worked for ACS.

28. Peterson also represented to ACS that "ETSG" was a company separate and distinct from a corporation she happened to own in the same name. This representation was false, as the only "ETSG" with any tangible connection to the contract with ACS is the one incorporated by Peterson.

29. At the time ACS paid the ETSG invoices submitted by Peterson, it was unaware of Peterson's false and fraudulent conduct, and believed Peterson's representations concerning ETSG and the ETSG contract to be true. As a direct and proximate result of Peterson's deception, ACS was induced to rely upon Peterson's representations, and was induced to and did pay the ETSG invoices in an amount that exceeds $300,000. Had ACS known the actual facts about Peterson and ETSG, it would not have taken such action.

30. As a result of Peterson's fraudulent conduct, both Peterson and ETSG collected unearned and unjustified profits, including but not limited to, undue payments made to ETSG and, specifically to Peterson, wages and other compensation paid in connection to her employment at ACS.

31. On or around January 20, 2007, ACS discovered Peterson's multiple schemes to defraud the organization. That week, Peterson resigned from her employment. At the time of her resignation, ACS management instructed Peterson to return all ACS property that she had in her possession or control.

32.     As of the date of this complaint, Peterson has refused to return one ACS laptop computer and other ACS property within her possession or control, in clear defiance of repeated demands from ACS for the return of said property.

## COUNT I

## VIOLATION OF TITLE 18 UNITED STATES CODE SECTION 1962 (c)
### (CIVIL RICO)

**(against Peterson)**

33.     The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

34.     ETSG is a corporation that constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

35.     Peterson is an individual capable of holding a legal or beneficial interest in property and is a person within the meaning of 18 U.S.C. § 1961(3).

36.     From at least November 2005 and continuing up to and including January 2007, Peterson did unlawfully, knowingly, and intentionally conduct and participate, directly and indirectly, in the conduct, management, and operation of the affairs of ETSG, which was engaged in, and the activities of which, affected interstate commerce, through a pattern of racketeering activity consisting of numerous acts of racketeering in the District of Columbia indictable under 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), and including the acts of racketeering alleged in this complaint.

37.     From at least November 2005 and continuing up to and including January 2007, Peterson did knowingly devise and intend to devise multiple schemes and artifices to defraud, and obtain money and property, from ACS by means of material false and fraudulent acts,

pretenses, representations, and omissions of fact, knowing that the acts, pretenses, representations, and omissions of fact were false when made.

38.    It was part of said schemes and artifices that Peterson would and did commit multiple predicate acts of mail fraud by directing and causing ACS, in detrimental reliance upon Peterson's material false and fraudulent pretenses, representations, and omissions of fact, to deposit with and be delivered by the U.S. Postal Service certain and numerous payment checks which were based upon false and fraudulent time sheets and invoices generated by Peterson with the intent of defrauding ACS.

39.    It was a further part of said schemes and artifices that Peterson would and did commit predicate acts of wire fraud by directing and causing ETSG to transmit corporate funds gained from the scheme to defraud ACS from ETSG's corporate bank account to Peterson's private bank account and the accounts of family members living out of state, all for their personal use and profit, and for the purpose of hiding said funds.

40.    It was a further part of said schemes and artifices that Peterson would and did misrepresent, conceal, hide and cause to be misrepresented, concealed and hidden for the purpose of, and acts done in furtherance of, the scheme to defraud ACS.

41.    It was a further part of said schemes and artifices that Peterson and ETSG would communicate with each other by mail, e-mail, and wire facilities, in furtherance of the scheme to defraud ACS.

42.    For the purpose of executing and attempting to execute her multiple schemes and artifices, Peterson would and did knowingly place and cause to be placed in any post office or authorized depository for mail certain matter, matters, and things to be sent and delivered by the U.S. Postal Service; took and received such matters and things; and knowingly caused to be

delivered by mail according to her direction, and at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter and thing, in violation of 18 U.S.C. § 1341, including the acts alleged in this complaint.

43.    For purposes of executing and attempting to execute her multiple schemes and artifices, Peterson would and did knowingly transmit in interstate commerce by means of wire communications, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme in violation of 18 U.S.C. § 1343, including the acts alleged in this complaint.

44.    Peterson's multiple schemes and artifices constituted a pattern of related and continued predicate acts that extended over a substantial period of time from at least November 2005 through January 2007, and in any event more than a year, which acts constitute at least two predicate racketeering offenses over a ten year period as defined under 18 U.S.C. § 1965.

45.    Peterson's multiple schemes and artifices victimized both ACS and its individual members, whose dues and fee payments are a significant source of income to ACS, and which income Peterson appropriated for her own personal use and profit.

46.    As a direct and proximate result of Peterson's unlawful actions, and by reason of violation of 18 U.S.C. § 1962, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, plus costs of suit and reasonable attorneys' fees.

47.    As a result of ACS's injuries caused directly by Peterson's unlawful actions, ACS is entitled to treble damages under 18 U.S.C. § 1964(c).

## COUNT II

## BREACH OF FIDUCIARY DUTY

### (against Peterson)

48.    The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

49.    As an employee and agent of ACS, Peterson owed fiduciary duties to ACS, including but not limited to duties of loyalty, full information and disclosure, and to act in ACS's best interest.  These duties arose as a consequence of the employment and/or the specific entrustment by ACS in Peterson to perform her duties and responsibilities in good faith and to refrain from engaging in self-dealing, conflicts of interest, placement of her interest above ACS's interest, and unauthorized acts on behalf of ACS that are adverse to ACS.

50.    Within the scope of Peterson's employment, Peterson had the trust, responsibility, and authority to engage in transactions on behalf of ACS for the purpose of furthering ACS's mission objectives and goals.

51.    Peterson breached her duties to ACS in that she failed and refused to disclose material facts concerning the transactions she engaged in on behalf of ACS in connection with ETSG, and failed and refused to disclose her participation in, management of, and control of ETSG, which presented a direct conflict of interest that she concealed and disregarded in order to deceive and defraud ACS.

52.    Peterson breached her duties in that she failed and refused to refrain from self-dealing, and abused her job position for the sole advancement of her self-interest to the detriment and disadvantage of ACS, including but not limited to the approval and submission of ETSG invoices which she knew to be false.

53.    Peterson personally profited from her breach of fiduciary duties to ACS by appropriating money from ACS for her own personal use and profit, and the profit of her relatives, and further obtaining consideration from ACS as wages for her employment at ACS, concealing from ACS her self-dealing, conflicts of interest, and acts adverse to ACS, and further causing ETSG to damage ACS up to $40 per hour above what ETSG paid Ms. McLaren.

54.    As a direct and proximate result of Peterson's unlawful actions, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, plus costs of suit and reasonable attorneys' fees.

55.    Peterson is not entitled to any profits she obtained through her breach of duties and is not entitled to any compensation paid to her by ACS while in breach of her duties.

## COUNT III

### FRAUD

**(against ETSG and Peterson)**

56.    The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

57.    As an incorporator, officer, and agent of ETSG, Peterson's actions on behalf of ETSG are imputable to ETSG.  Furthermore, as an alter ego of ETSG, Peterson is individually liable for any unlawful actions by ETSG.

58.    On behalf of ETSG, Peterson engaged in acts and made representations and omissions of fact relating to ETSG, the ETSG contract, and ETSG's invoices to ACS, as more specifically set forth in this complaint.

59.    These acts and misrepresentations and omissions of fact constitute assertions of a false representation of a material fact to ACS.

60.     Peterson/ETSG intended their material acts and misrepresentations and omissions of fact to deceive, mislead, and misinform ACS and to cause ACS to act and rely upon them.

61.     Peterson/ETSG knew or should have known their material acts and representations were false at the time they were made, and Peterson/ETSG knew or should have known their material acts and misrepresentations and omissions of fact would induce, and did induce, ACS to act and rely upon them.

62.     The material acts and misrepresentations and omissions of fact made by Peterson/ETSG were reasonably relied upon by ACS, to the detriment and disadvantage of ACS, resulting in direct harm to ACS.

63.     The material acts and misrepresentations and omissions of fact made by Peterson/ETSG constitute actual fraud and fraudulent inducement against ACS.

64.     The material acts and misrepresentations and omissions of fact made by Peterson/ETSG were made with actual malice, oppressively and in a spirit of mischief, amounting to extreme overreaching, and such recklessness or gross negligence as to evince a conscious disregard of the rights of others.

65.     As a direct and proximate result of Peterson's and ETSG's unlawful actions, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, costs of suit and reasonable attorneys' fees.

66.     Due to the severity of the conduct herein alleged, ACS is entitled to punitive damages.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

### (against ETSG and Peterson)

67.    The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

68.    As an incorporator, officer, and agent of ETSG, Peterson's actions on behalf of ETSG are imputable to ETSG.  Furthermore, as an alter ego of ETSG, Peterson is individually liable for any unlawful actions by ETSG.

69.    On behalf of ETSG, Peterson made misrepresentations and omissions of fact relating to ETSG,  the ETSG contract, and ETSG's invoices to ACS, as more specifically set forth in this complaint.

70.    These misrepresentations and omissions of fact were material to ACS, and were innocently or negligently made with the intent that ACS would rely on them.

71.    ACS reasonably relied upon these misrepresentations and omissions of fact, to the detriment and disadvantage of ACS, resulting in direct harm to ACS.

72.    Peterson/ETSG should have recognized that ACS would likely be imperiled by action taken in reliance upon their collective misrepresentations.

73.    As a direct and proximate result of Peterson's and ETSG's unlawful actions, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, costs of suit and reasonable attorneys' fees.

## COUNT V

### BREACH OF CONTRACT

**(against ETSG and Peterson)**

74.    The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

75.    The agreement executed between Peterson, acting on behalf of ACS, and ETSG constituted a contract.

76.    Under the terms of the contract, ETSG was obligated to invoice ACS only for services and work actually performed by Ms. McLaren.

77.    After execution of the contract, ETSG submitted invoices to ACS for services and work not performed in such a manner that caused ACS to pay false and fraudulent invoices, to the detriment and disadvantage of ACS.

78.    ETSG breached its contract with ACS.

79.    As a direct and proximate result of ETSG's unlawful actions, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, for which ETSG is liable.

80.    As the alter ego of ETSG, Peterson is individually liable for the unlawful actions of ETSG, and the amount in damages owed by ETSG for breach of contract.

### COUNT VI

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**(against ETSG and Peterson)**

81.    The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

82.    District of Columbia law implies in all contracts a duty of good faith and fair dealing. This duty prevents a party from evading the spirit of the contract, willfully rendering imperfect performance or interfering with the other party's performance.

83.    ETSG breached its duty of good faith and fair dealing by engaging in, or acquiescing to, multiple schemes to defraud ACS, and to deliberately and dishonestly manipulate its contract with ACS in an unreasonable, arbitrary and capricious manner that wholly evaded and destroyed the spirit of the bargain.

84.    As a result of ETSG's unlawful actions, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, plus costs of suit and reasonable attorneys' fees.

85.    As the alter ego of ETSG, Peterson is individually liable for the unlawful actions of ETSG, and the amount in damages owed by ETSG for breach of the implied covenant of good faith and fair dealing.

## COUNT VII

## UNJUST ENRICHMENT

### (against ETSG and Peterson)

86.    The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

87.    ETSG and Peterson have no legitimate interest in, or right to, the funds received or retained as a result of their fraudulent conduct and, therefore, in equity and good conscience, should not be allowed to retain such funds.

88.    As a result of their fraudulent conduct, ETSG and Peterson should be required to return such funds, with prejudgment interest, and disgorge any profits they may have made from the use of such funds.

17

## COUNT VIII

## CONVERSION

### (against Peterson)

89.     The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

90.     At all times herein mentioned, and in particular in February 2007, ACS was, and still is entitled to the possession of its property, namely a laptop computer and other ACS property and documents issued to Peterson incident to her employment with ACS.

91.     In January 2007, Peterson took the above-mentioned property from ACS's possession and converted the same to her own use.

92.     In January 2007, ACS demanded the immediate return of the above-mentioned property but Peterson failed and refused, and continues to fail and refuse, to return the property to ACS.

93.     As a proximate result of Peterson's conversion, ACS suffered damages which are the natural, reasonable, and proximate results of the conversion.

94.     Between the time of Peterson's conversion of the above-mentioned property to her own use and the filing of this action, ACS expended the time and money in the pursuit of the converted property, all to ACS's further damage.

95.     The aforementioned acts of Peterson were taken with actual malice, oppressively and in a spirit of mischief, amounting to extreme overreaching, and such recklessness or gross negligence as to evince a conscious disregard of the rights of others, and justify the awarding of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in its favor and against defendants, providing the following relief:

a.  Actual, compensatory, and consequential damages in an amount no less than $300,000 or as proved at trial, plus interest;

b.  Treble damages as a result of the violations alleged under Count I;

c.  The value of all property converted, plus interest, and damages for time and money properly expended in pursuit of the converted property;

d.  Disgorgement of all profits in an amount equal to the funds and benefits obtained by defendants illegally as a result of the violations alleged herein, plus interest on that amount;

e.  Return of all compensation paid by ACS after November 7, 2005 in an amount no less than $100,000;

f.  Punitive damages in an amount of $400,000;

g.  Attorneys' fees and costs; and

h.  Such other and further relief as this Court may deem proper.

Respectfully submitted,

JACKSON LEWIS LLP

Dated: February 21, 2007          By: _John C. Remy_____

John M. Remy (D.C. Bar No. 461244)
Jennifer A. Harper (*admitted 2/9/2007; bar no. pending*)
8614 Westwood Center Drive
Suite 950
Vienna, Virginia 22182
(703) 821-2189
(703) 821-2267 Facsimile
remyj@jacksonlewis.com
harperj@jacksonlewis.com

ATTORNEYS FOR PLAINTIFF

19

07-375
PLF

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

American Chemical Society

## DEFENDANTS

Enterprise Technology Services Group, LLC and Nekol Bell Peterson

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____11001_____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____88888_____
(IN U.S. PLAINTIFF CASES ONLY)
AND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John M. Remy, Esq.
Jackson Lewis LLP
8614 Westwood Center Drive
Vienna, VA 22102          703-821-2189

CASE NUMBER    1:07CV00375

JUDGE: Paul L. Friedman

DECK TYPE: General Civil

DATE STAMP: 02/21/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government Plaintiff

● 3 Federal Question
(U.S. Government Not a Party)

O 2 U.S. Government Defendant

O 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

O **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

O **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

O **F. Pro Se General Civil**

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☒ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

**...Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

al 28 USC 158
Irawal 28 USC 157

...ions
...h Penalty
...damus & Other
l Rights
...on Condition

...hts
...yrights
...ent
...demark

---

Court Name: District of Columbia
Division: 1
Receipt Number: 4616002452
Cashier ID: dcallis
Transaction Date: 02/21/2007
Payer Name: JACKSON LEWIS LLP
-----------------------------
CIVIL FILING FEE
 For: JACKSON LEWIS LLP
 Amount:      $350.00
-----------------------------
CHECK
 Check/Money Order Num: 2409
 Amt Tendered: $350.00
-----------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:       $0.00

07-0375

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check.

| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | O **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)  *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act)  *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O **K. Labor/ERISA (non-employment)** | O **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**N. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

18 U.S.C. 1962(c) Civil RICO cause of action as well as various fraud and contract related common law claims

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** In excess of $1,000,000   Check YES only if demanded in complaint
**JURY DEMAND:** YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 2/20/07   SIGNATURE OF ATTORNEY OF RECORD

JTC

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.