## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN CHEMICAL SOCIETY

        Plaintiff/Counter-Defendant,

  v.

ENTERPRISE TECHNOLOGY SERVICES
GROUP, LLC, et al.

        Defendants/Counter-Plaintiff.

Civil Action No.:  1:07cv00375(PLF)

## PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR LEAVE
## TO FILE AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a) and Local Rule 15.1, Plaintiff/Counter-Defendant American Chemical Society ("ACS") hereby moves the Court for leave to amend the complaint to add Alvin Peterson, Matice Aaron Hunt, and Audrey McLaren as defending parties to this action, which includes adding these parties to counts in the original complaint and the addition of two conspiracy counts (under RICO and common law fraud).  Plaintiff/Counter-Defendant also seeks leave to amend the original complaint to include specific allegations which demonstrate the liability of these putative defendants as well as additional factual allegations against defendant Nekol Bell Peterson.  An original copy of the Amended Complaint is attached to this Motion as exhibit A.

Plaintiff's counsel spoke with defense counsel about the instant motion in effort to obtain defense counsel's consent.  Defense counsel stated he would not consent to this motion.

Respectfully submitted,

JACKSON LEWIS LLP

Dated: October 15, 2007          By:     /S/_____

John M. Remy (D.C. Bar No. 461244)
Jennifer A. Harper (D.C. Bar No. 502828)
8614 Westwood Center Drive, Suite 950
Vienna, Virginia 22182
(703) 821-2189
(703) 821-2267 Facsimile
remyj@jacksonlewis.com
harperj@jacksonlewis.com

ATTORNEYS FOR PLAINTIFF/COUNTER-
DEFENDANT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN CHEMICAL SOCIETY

           Plaintiff/Counter-Defendant,

    v.

ENTERPRISE TECHNOLOGY SERVICES
GROUP, LLC, et al.

           Defendants/Counter-Plaintiff.

Civil Action No.:  1:07cv00375(PLF)

## ORDER GRANTING MOTION FOR LEAVE
## TO FILE AMENDED COMPLAINT

    The Court has considered plaintiff/counter-defendant American Chemical Society's motion for leave to file an amended complaint, and all papers and arguments submitted in support thereof and in opposition thereto.  The Court finds good cause to grant leave. Accordingly, the motion is hereby GRANTED.  Pursuant to Local Civil Rule 15.1, the amended complaint filed as exhibit A to the motion for leave shall be deemed filed by plaintiff/counter-defendant as of the date of this Order.

IT IS SO ORDERED this _____ day of _____, 2007.

_____
United States District Court Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CHEMICAL SOCIETY<br><br>        Plaintiff/Counter-Defendant,<br><br>   v.<br><br>ENTERPRISE TECHNOLOGY SERVICES<br>GROUP, LLC, et al.<br><br>        Defendants/Counter-Plaintiff. | Civil Action No.:  1:07cv00375(PLF) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff/Counter-Defendant American Chemical Society ("ACS") submits this memorandum in support of its motion for leave to amend the complaint to add Alvin Peterson, Matice Aaron Hunt, and Audrey McLaren as defending parties, to include factual allegations that demonstrate the liability of these defendants, to include two counts for conspiracy under RICO and common law fraud, and to include additional factual allegations against defendant Nekol Bell Peterson.

**I.     BACKGROUND**

**A.     Defendants Continue to Stonewall ACS' Discovery Efforts**

On February 21, 2007, ACS brought an action against Enterprise Technology Services Group, LLC and Nekol Bell Peterson ("Bell Peterson") for defrauding ACS of more than $200,000 through an elaborate billing scheme involving fictitious and inflated invoices.

On June 19, 2007, this Court ordered defendants to provide written responses to interrogatories and requests for production and copies of all responsive documents to plaintiff's counsel by June 29, 2007. Defendants did not comply with this order.

On July 30, 2007, with permission of this Court, ACS filed a motion to compel and for sanctions. Although defendants produced a small number of documents and provided some information following ACS filing the motion to compel, the great majority of requested documents and information have not been provided.

On October 2, 2007, Magistrate Judge Robinson granted ACS' motion to compel and gave defendants until October 12, 2007 to provide responses and responsive documents to all outstanding discovery requests. As of October 15, 2007, defendants have not complied with Magistrate Judge Robinson's order. Magistrate Judge Robinson has scheduled a status conference for October 23, 2007. This Court has scheduled a status conference for October 24, 2007.

**B.    ACS Learned Facts in Discovery Showing Alvin Peterson, Matice Aaron Hunt, and Audrey McLaren Conspired with and Assisted Bell Peterson**

Despite defendants' continued "stonewalling", ACS has learned facts in discovery that support the allegations in the amended complaint. For example, ACS has learned through subpoenas to third parties, shortly after ACS discovered Bell Peterson's fraud, Bell Peterson, Alvin Peterson, and Matice Aaron Hunt emptied defendant ETSG's bank accounts of over $33,000 in fraudulently obtained funds. Alvin Peterson and Hunt received these funds rightly belonging to ACS.

In August 2007, ACS discovered that Alvin Peterson assisted in the creation of a false contract between ACS and defendant ETSG. The false contract is back-dated to September 2005

even though the form of the contract was purchased from "LawDepot.com" in February 2007. Hunt signed this false, back-dated contract knowing it could not be authentic.

ACS also learned Audrey McLaren provided false information to ACS during its investigation of the fraud. Through deposition on September 26, 2007, ACS also learned Alvin Peterson and Hunt created the false invoices that defendant Bell Peterson submitted to ACS as part of her fraud and McLaren was aware of and agreed to the false invoicing at the time it occurred. Alvin Peterson, Hunt, and McLaren committed the acts described above to aid Bell Peterson in committing and concealing her fraud and RICO violations.

Accordingly, ACS seeks to add these individuals as defendant co-conspirators for RICO, and common law fraud and (for Alvin Peterson and Hunt) unjust enrichment.

### C.    ACS Learned in Discovery that Hunt and McLaren Are Owners of, and Liable for the Debts of, ETSG

Based on an "Operating Agreement" produced to ACS by ETSG in late August 2007, ACS learned Hunt and McLaren have been owners of ETSG with Bell Peterson (one-third ownership each). ACS has also learned that ETSG was never capitalized, never followed any corporate formalities (including apparently never paying taxes or issuing tax documents to its employees), never purchased insurance, and allowed Bell Peterson to spend over $150,000 of ETSG corporate funds on personal and household items. In the original complaint, ACS sought to "pierce" ETSG's corporate veil with respect to Bell Peterson. ACS now seeks to amend the complaint to extend this "piercing" to Hunt and McLaren.

### D.    ACS Uncovered a New "Kickback" Scheme in Discovery

ACS also learned in discovery that Bell Peterson received up to $91,000 in "kickbacks" from outside consultants she hired for ACS while an ACS employee. Bell Peterson conditioned these consultants working for ACS on their agreement to pay her $20/hour for each hour billed to

3

ACS. If the consultants would not make these kickbacks to Bell Peterson, Bell Peterson would not allow them to work for ACS.

Accordingly, ACS seeks to amend the complaint to include this kickback scheme in its count against Bell Peterson for breach of duty of loyalty and seeks disgorgement of these ill-gotten, secret profits.

## II.   ARGUMENT

Federal Rule of Civil Procedure 15(a) provides a party may amend a pleading by leave of court and that leave "shall be freely given when justice so requires." The D.C. District Court follows a liberal policy of granting leave to amend: "The court must, however, heed Rule 15's mandate that leave is to be freely given when justice so requires." *Boyd v. District of Columbia*, 465 F. Supp. 2d 1, 3 (D.D.C. 2006). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.*

Federal Rule of Civil Procedure 20(a) permits a plaintiff to join all persons as defendants in one action. The D.C. federal court has explained the standard required to meet this rule:

> In order to permissively join defendants under Fed. R. Civ. P. 20(a), a complaint must either assert joint and several liability or must allege that the case against each party arises out of the same transaction or occurrence, or series of transactions. Second, there must be questions of law or fact that are common the each party.

*United States ex rel. Gynberg v. Alaska Pipeline Co.*, 1997 U.S. Dist. LEXIS 5221 *5 (D.D.C. 1997).

Under Rule 20(a), joining all possible defendants in one action promotes judicial economy, avoids multiplicity of suits, and encourages a comprehensive resolution of disputes arising out of the same facts without overlapping litigation:

4

> The purpose of Rule 20(a) is to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it.

*Lucas v. Barreto*, 2005 U.S. Dist. LEXIS 4248 *4 (D.D.C. 2005).

In *Wright v. Herman*, 230 F.R.D. 1 (D.D.C. 2005), the plaintiff claimed corporate managers misappropriated funds. The plaintiff filed a motion for leave to amend the complaint to add a defendant based on facts learned in discovery. The D.C. District Court granted the motion for leave to amend, finding:

> [It] is aware of no reasons … why granting leave to supplement the complaint with the facts discovered by the plaintiff after her first amended complaint, including the addition of [a] defendant, would be improper.

Similarly, federal courts frequently grant motions under Rule 20(a) joining defendants based on alleged RICO violations or where the defendants are alleged to be alter egos of a corporate defendant. *See, e.g.*, *Dixon v. Ford Motor Credit Co.*, 1999 U.S. Dist. LEXIS 2089 (E.D. Pa.) (plaintiffs allowed to amend complaint to include RICO claim and add defendants because the claims all involved a common question of law); *Williams v. Salt City Painting*, 1992 U.S. Dist. LEXIS 15017 (S.D.N.Y. 1992) (joinder of individual defendant allowed where defendant was alleged to have alter ego status with the defendant corporation).

Here, as in *Wright*, ACS seeks to amend the complaint based on facts learned in discovery, including the addition of a defendant. As in *Wright*, the amended complaint here meets Rule 20(a)'s requirements for joinder. ACS asserts joint and several liability against Bell Peterson and each of the defendants sought to be added, including co-conspirator liability against all individual defendants and alter ego status against Bell Peterson, Hunt, and McLaren. ACS' allegations against Alvin Peterson, McLaren, and Hunt also arise out of the same transactions and occurrences alleged in the original complaint, *i.e.*, Bell Peterson's fraudulent billing

schemes. The same questions of law will apply to each defendant because the defendants will all be sued under the same counts.

In addition, because the actions of Alvin Peterson, McLaren, and Hunt arise out of the facts set forth in the original complaint, adjudicating the claims in one action will avoid multiple lawsuits and eliminate the possibility of inconsistent judgments. There is no prejudice or surprise to the individual defendants sought to be added because, as the allegations in the amended complaint demonstrate, each defendant is involved in an *on-going* cover up of the fraud, including acts taken during this litigation, such that the defendants knowingly placed themselves in a position of liability for their unlawful conduct. The amended complaint seeks to hold Alvin Peterson, McLaren, and Hunt accountable for their integral role in causing, concealing, or unjustly benefiting from the injuries suffered by ACS.

## III.    **CONCLUSION**

For the foregoing reasons, ACS respectfully requests its Motion for Leave to File Amended Complaint be granted.

Respectfully submitted,

JACKSON LEWIS LLP

Dated: October 15, 2007          By:     /S/_____
                                         John M. Remy (D.C. Bar No. 461244)
                                         Jennifer A. Harper (D.C. Bar No. 502828)
                                         8614 Westwood Center Drive
                                         Suite 950
                                         Vienna, Virginia 22182
                                         (703) 821-2189
                                         (703) 821-2267 Facsimile
                                         remyj@jacksonlewis.com
                                         harperj@jacksonlewis.com
                                         ATTORNEYS FOR PLAINTIFF/COUNTER-
                                            DEFENDANT

# Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN CHEMICAL SOCIETY
1155 Sixteenth Street, N.W.
Washington, DC 20036

        Plaintiff,

    v.

ENTERPRISE TECHNOLOGY SERVICES
GROUP, LLC
9749 Goodluck Road, Building 6
Seabrook, MD 20706;

NEKOL BELL PETERSON
1839 Barrington Court
Mitchellville, MD 20721;

ALVIN PETERSON
1839 Barrington Court
Mitchellville, MD 20721;

MATICE AARON HUNT
9749 Goodluck Road, Building 6
Seabrook, MD 20706

AUDREY MCLAREN
12800 Middlevale Lane
Silver Spring, MD 20906

        Defendants.

Civil Action No.:  1:07CV00375 (PLF)

**FIRST AMENDED COMPLAINT**

Plaintiff the American Chemical Society, by and through its undersigned attorneys, for its amended complaint herein alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action to recover actual, compensatory, exemplary, and other damages, and all other relief which this Court deems just and proper, caused by defendants' fraudulent and tortious conduct in violation of federal statutes and the common laws of the District of Columbia.

2.      This action states a claim against one or more defendants for participating in, operating and/or maintaining an enterprise engaged in a pattern of racketeering activity, and for conspiring to commit, conceal, and further advance the pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and § 1962(d). The predicate acts upon which this federal violation is founded are criminal mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively.  This action also states claims against one or more defendants for breach of fiduciary duty, fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, common law conspiracy, unjust enrichment, and conversion.

**PARTIES**

3.      The American Chemical Society (hereinafter referred to as "ACS") is a federally chartered nonprofit scientific and education organization with its principal place of business located at 1155 Sixteenth St., N.W., Washington, D.C. 20036. *See* 36 U.S.C. §§ 20501-20506.  ACS has more than 160,000 individual members at all degree levels and in all fields of chemistry and chemical engineering.  Since its founding in 1876, ACS has been actively involved in the science, education, and public policy arenas.  ACS advances scholarly knowledge,

professional services and support, and provides a broad range of opportunities for peer interaction and career development.

4.    Enterprise Technology Services Group LLC (hereinafter "ETSG") is a limited liability corporation incorporated or registered in the state of Maryland and which engages in interstate commerce by selling and performing technology solutions services to clients outside Maryland, including in the District of Columbia.

5.    Nekol Bell Peterson ( "Bell Peterson"), a.k.a. Nekol Bell-Peterson, a.k.a. Nekol Bell, a.k.a Nekol Lachele Bell, is an individual who resides at 1839 Barrington Court, Mitchellville, Maryland, 20721. At all relevant times, Bell Peterson was an employee, agent, and fiduciary of ACS entrusted with the procurement and administration of software consulting services to provide support and maintenance of ACS's financial accounting system. Bell Peterson also is an owner and incorporator of ETSG. At times pertinent to this first amended complaint, Bell Peterson facilitated, materially participated, actively engaged in, and personally profited from the fraudulent and unlawful conduct alleged herein. In addition, Bell Peterson conspired with the defendants to conceal the fraudulent and unlawful conduct from discovery by ACS in an attempt to avoid having to account for her unlawful actions.

6.    Alvin Peterson is an individual who resides at 1839 Barrington Court, Mitchellville, Maryland, 20721. Alvin Peterson is the current spouse of Nekol Bell Peterson. At times pertinent to this first amended complaint, Alvin Peterson conspired with, assisted, and aided and abetted Bell Peterson in committing and concealing the fraudulent and unlawful conduct from discovery by ACS, and personally profited from such unlawful conduct.

7.    Matice Aaron Hunt ("Hunt") is an individual who resides at 9749 Goodluck Road, Building 6, Seabrook, Maryland 20706. Hunt is an owner of ETSG and, at times pertinent to this first amended complaint, has held and continues to hold herself out to be an

3

executive of ETSG. At relevant times, Hunt conspired with, assisted, and aided and abetted Bell Peterson in committing and concealing the fraudulent and unlawful conduct from discovery by ACS, and personally profited from such unlawful conduct.

8.     Audrey McLaren ("McLaren") is an individual who resides at 12800 Middlevale Lane Silver Spring, MD 20906. McLaren is an owner of ETSG and, at times pertinent to this first amended complaint, has held and continues to hold herself out to be an Vice President of ETSG. At relevant times, McLaren conspired with, assisted, and aided and abetted Bell Peterson in committing the fraudulent and unlawful conduct and concealing the fraudulent and unlawful conduct from discovery by ACS.

## JURISDICTION AND VENUE

9.     Jurisdiction in this action is predicated upon 28 U.S.C § 1331 and 18 U.S.C §§ 1964(a) and (c), and D.C. Code § 13-423(4). The ends of justice also require that defendants Alvin Peterson, Matice Aaron Hunt, and Audrey McLaren, who committed a series of acts out of state intended to conceal the alleged tortious and criminal actions and personally profit from such actions, should be brought before this Court to account for their unlawful conduct.

10.     Venue for this action is predicated upon 18 U.S.C §§ 1965 (a) and (b) and 28 U.S.C. §§ 1391(b) and (c). ACS's principal place of business is in the District of Columbia, defendants committed, in part, the alleged tortious and criminal actions in the District of Columbia, and defendant ETSG markets, sells, and transacts business in the District of Columbia, including contracting to perform software support services for ACS. In addition, nearly all of the events giving rise to this complaint occurred in the District of Columbia.

## BACKGROUND

11.    In February 2005, ACS hired Bell Peterson as a Project Lead in the finance department. Bell Peterson was responsible for, among other things, the implementation, maintenance, and upgrade of ACS's accounting software programs.

12.    To carry out her employment responsibilities, Bell Peterson was entrusted with discretionary authority to hire information technology consultants to provide on-going technical support services for ACS's financial accounting systems. Bell Peterson was responsible for negotiating and administering consulting contracts, and for monitoring and approving all time worked by such consultants, including reviewing, verifying, and approving hours and amounts invoiced by the consultants to ACS.

13.    On or about November 7, 2005, Bell Peterson entered into a contract on behalf of ACS with Enterprise Technology Services Group, or ETSG, to provide software support and maintenance services for ACS's "PeopleSoft" accounting software program. The duration of the contract was November 11, 2005 through December 31, 2006. Payment for ETSG services was agreed at $100.00 per hour. The contract required ACS to pay ETSG for "services ... performed."

14.    Bell Peterson signed the contract on behalf of ACS and McLaren signed the contract on behalf of ETSG.

15.    McLaren is an information technology consultant hired by Bell Peterson to perform "PeopleSoft" consulting services for ACS. As more fully described in paragraph 27 below, McLaren and Bell Peterson each had an ownership interest in ETSG at the time they executed the contract with ACS.

16.    Upon information and belief, Bell Peterson and McLaren agreed that ETSG would handle billing and payroll/tax matters and that McLaren would receive payment for her services directly from ETSG. The arrangement provided that ETSG would pay McLaren an

5

amount between $60 and $65 per hour. McLaren's hours would be tracked using time sheets, which were to be submitted to Peterson on a weekly basis.

17.     When submitting the contract to ACS, Bell Peterson ensured that no Form 1099 would be issued to ETSG.

18.     McLaren was the only ETSG contractor working on ACS's "PeopleSoft" accounting program during the period relevant to this complaint, and she performed no other services for ACS at any time. Pursuant to the terms of the contract, McLaren began her work at ACS on November 11, 2005.

19.     ETSG was incorporated and registered in Maryland on December 8, 2005 by Bell Peterson herself, and was designated as the sole signatory for ETSG's accounts. Upon information and belief, Bell Peterson incorporated ETSG for the purpose of defrauding ACS.

20.     Beginning in December 2005, Bell Peterson breached her fiduciary duties to ACS and manipulated ETSG and its contract with ACS to repeatedly and continually appropriate money from ACS for the individual defendants' personal use and profit. To achieve this, Bell Peterson embarked upon three specific schemes.

21.     In the first scheme, Bell Peterson deliberately concealed all weekly time sheets submitted by McLaren and drafted in their place false time sheets that contained an inflated number of hours for each relevant week. Bell Peterson then generated ETSG invoices to correspond to the fabricated time sheets and, using her authority as Project Lead, approved the invoices on behalf of ACS. Bell Peterson presented the invoices to ACS's accounts payable department in such a manner as to represent that the invoices were true and accurate, and to knowingly disguise the fraud. Unaware of the fraud, and having no reason to disbelieve Bell Peterson, ACS paid the invoices by check and delivered the payments to ETSG through the U.S. mail. Bell Peterson committed this hour inflation scheme no less than 30 times throughout the

course of the contract, at a substantial cost to ACS, and lasted from at least December 2005 up to and including January 2007.

22.     In the second scheme, Bell Peterson repeatedly double-billed ACS for a single ETSG service. Bell Peterson accomplished this by deliberately generating multiple ETSG invoices and staggering their submission to accounts payable over the course of the contract. Bell Peterson personally approved the invoices on behalf of ACS and presented the invoices to accounts payable in such a manner as to represent that the invoices were true and accurate, and to knowingly disguise the fraud. Unaware of the fraud, and having no reason to disbelieve Bell Peterson, ACS paid the invoices by check and delivered the payments to ETSG through the U.S. mail. Bell Peterson committed this double-billing scheme no less than 10 times throughout the duration of the contract, at a substantial cost to ACS, and lasted from at least December 2005 up to and including January 2007.

23.     In the third scheme, Bell Peterson generated, approved, and submitted invoices on behalf of ETSG for services that were never performed. Each of these invoices billed large quantities of phantom hours never worked, some of the invoices exceeding actual work performed by as much as 40 additional hours, or one full work week. As with the other ETSG invoices, Bell Peterson presented the invoices to accounts payable in such a manner as to represent that the invoices were true and accurate, and to knowingly disguise the fraud. Unaware of the fraud, and having no reason to disbelieve Bell Peterson, ACS paid the invoices by check and delivered the payments to ETSG through the U.S. mail. Bell Peterson committed this false billing scheme numerous times throughout the duration of the contract, at a substantial cost to ACS, and lasted from at least December 2005 up to and including January 2007.

24.    Upon information and belief, all payments made to ETSG by ACS as a result of Bell Peterson's multiple schemes were deposited into ETSG's financial accounts. As the sole signatory for these accounts, Bell Peterson had personal and exclusive access to ETSG funds.

25.    Upon information and belief, Bell Peterson withdrew funds from ETSG's accounts and wired or used the mails to transfer the funds to herself, Alvin Peterson, and friends and family members, each for their personal use and profit.

26.    Bell Peterson also transformed ETSG into a private expense account, charging over $150,000 in personal expenses to ETSG's corporate debit card and using ETSG funds to pay for clothing and other personal and household items.

27.    The owners and operators of ETSG are Bell Peterson, Hunt, and McLaren. An ETSG Operating Agreement dated June 15, 2002 provided that Bell Peterson, Hunt, and McLaren each owned a 33% interest in the company. No other members of ETSG are listed in the document.

28.    Upon information and belief, ETSG is not capitalized or is undercapitalized.    Article II, Section 1 of the Operating Agreement, entitled "Capital Contribution," lists no capital contributions to ETSG from any person or entity. Upon information and belief, ETSG does not utilize standard accounting practices, conduct audits or financial reviews, produce annual reports, or engage in substantial activities that promote or advertise its business to the general public. ETSG's corporate functions were solely managed and controlled by Bell Peterson, Hunt, and McLaren.

29.    ETSG is an alter ego of Bell Peterson, and Bell Peterson is an alter ego of ETSG, in that Bell Peterson now and at all relevant times has completely dominated and controlled the assets, operations, activities, and business affairs of ETSG, failed to observe important corporate formalities, commingled corporate funds with her own, used ETSG to perpetrate fraud

8

upon ACS, and further used the assets of ETSG for personal affairs and purposes, as if those assets belonged to Bell Peterson personally, to such an extent that any adherence to the fiction of the separate existence of ETSG as a person or entity distinct from Bell Peterson would permit the abuse of a corporate or similar privilege of limited liability, if any, and would promote injustice by allowing Bell Peterson to evade liability or veil assets that should in equity be used to satisfy the judgment sought by ACS.

30.    ETSG is an alter ego of Hunt, and Hunt is an alter ego of ETSG, in that Hunt now and at all relevant times has, with certain other defendants, completely dominated and controlled the assets, operations, activities, and business affairs of ETSG, failed to observe important corporate formalities, commingled corporate funds with her own, allowed Bell Peterson to commingle corporate funds in similar fashion, and allowed ETSG to perpetrate fraud upon ACS, and further used the assets of ETSG for personal affairs and purposes, as if those assets belonged to Hunt personally, to such an extent that any adherence to the fiction of the separate existence of ETSG as a person or entity distinct from Hunt would permit the abuse of a corporate or similar privilege of limited liability, if any, and would promote injustice by allowing Hunt to evade liability or veil assets that should in equity be used to satisfy the judgment sought by ACS.

31.    ETSG is an alter ego of McLaren, and McLaren is an alter ego of ETSG, in that McLaren now and at all relevant times has, with certain other defendants, completely dominated and controlled the assets, operations, activities, and business affairs of ETSG, failed to observe important corporate formalities, allowed Bell Peterson and Hunt to commingle corporate funds with their own, and allowed ETSG to perpetrate fraud upon ACS to such an extent that any adherence to the fiction of the separate existence of ETSG as a person or entity distinct from McLaren would permit the abuse of a corporate or similar privilege of limited liability, if any, and

9

would promote injustice by allowing McLaren to evade liability or veil assets that should in equity be used to satisfy the judgment sought by ACS.

32.     In furtherance of Bell Peterson's multiple schemes to defraud ACS, Bell Peterson caused certain writings, telephone communications, and e-mail messages to be disseminated to ACS.

33.     Upon information and belief, Bell Peterson and Alvin Peterson created and disseminated two false and fraudulent contracts, one between ACS and Bell Peterson, the other between ACS and ETSG. Bell Peterson and Alvin Peterson knew the contracts were false and fraudulent in their entirety and created the false documents in an attempt to conceal the fraud perpetrated upon ACS, protect Bell Peterson and the other defendants from having to account for their fraudulent actions, and retain the funds fraudulently obtained from ACS. Alvin Peterson also created and participated in the creation of the fraudulent invoices ETSG and Bell Peterson submitted to ACS. Alvin Peterson knew at the time that these invoices were fraudulent and intended ACS to make payments on the fraudulent invoices he created and helped to create.

34.     Upon information and belief, Hunt assisted in the creation and dissemination of the false contract between ACS and ETSG and voluntarily signed her name to the false contract representing herself as an executive of ETSG, when she knew or should have known the contract was entirely fictitious and designed to conceal the fraud perpetrated upon ACS. Upon information and belief, Hunt did this to conceal the fraud perpetrated upon ACS, protect Bell Peterson and the other defendants from having to account for their fraudulent actions, and retain the funds fraudulently obtained from ACS. Hunt also created and participated in the creation of the fraudulent invoices ETSG and Bell Peterson submitted to ACS. Hunt knew at the time that these invoices were fraudulent and intended ACS to make payments on the fraudulent invoices she created and helped to create.

35.    In an attempt to further conceal her multiple schemes to defraud ACS, Bell Peterson caused an e-mail message regarding ETSG to be sent to ACS from David Smith, Sr., whom Bell Peterson represented to ACS was an executive of ETSG. The e-mail message purportedly came from an ETSG e-mail account and was received by ACS shortly after Bell Peterson informed ACS that she did not have any corporate relationship with ETSG. This constitutes an additional fraud upon ACS in that Bell Peterson devised the e-mail message to create the illusion that she did not have a corporate relationship with or financial interest in ETSG and to conceal from discovery the fraud perpetrated upon ACS.

36.    In an attempt to further conceal her multiple schemes to defraud ACS, Bell Peterson represented to ACS that McLaren submitted her time sheets to someone at ETSG other than Bell Peterson. This representation was false, as ACS subsequently learned that McLaren submitted her time sheets directly to Bell Peterson.

37.    Bell Peterson also represented to ACS that three additional ETSG consultants other than McLaren were working for ACS. This representation was false, as McLaren was the only ETSG consultant who ever worked for ACS.

38.    Bell Peterson also represented to ACS that "ETSG" was a company separate and distinct from a corporation she happened to own in the same name. This representation was false, as the only "ETSG" with any tangible connection to the contract with ACS is the one owned and incorporated by Bell Peterson. In a subsequent attempt to validate her false statement, Bell Peterson used the wires to attempt to create a second company called "ETSG" in Nevada.

39.    In addition, McLaren represented to ACS that she had no corporate interest in ETSG and that she was completely unfamiliar with the company. This representation was false, as McLaren has and continues to have an ownership interest in ETSG and serves as the

company's Vice President. Upon information and belief, McLaren made this false representation in conspiring with Bell Peterson to conceal from discovery the fraud perpetrated upon ACS. McLaren also knew at the time that Bell Peterson, Alvin Peterson, and Hunt were creating, submitting to ACS, and receiving payment from ACS on fraudulent invoices that, among other things, inflated the hours McLaren and ETSG actually worked for ACS.

40.    As one-third owners and individual operators of ETSG, Bell Peterson, Hunt, and McLaren each had a fiduciary duty to conduct the affairs of ETSG in good faith and in the best interests of the company. In blatant disregard of this duty, Bell Peterson used ETSG as a vehicle to defraud ACS. In their positions as owners, executives, and operators of ETSG (and in McLaren's additional position as a consultant for ACS), Hunt and McLaren knew or should have known about Bell Peterson's multiple schemes to defraud ACS and took no action to prevent or stop the unlawful conduct. Hunt and McLaren agreed or acquiesced to Bell Peterson's multiple schemes to defraud ACS in order to personally benefit from its profits.

41.    During her employment at ACS, Bell Peterson also used her authority to obtain kickback payments from information technology consultants in exchange for hiring them as contractors for ACS. This includes two companies, EITS and ASIAM, which Bell Peterson forced to pay $20 out of every hour billed to ACS as a kickback for her agreement to hire them as PeopleSoft consultants. Bell Peterson instructed EITS and ASIAM to make the kickback payments out to ETSG. Upon receipt, she and Alvin Peterson deposited the kickback payments into ETSG's account. From this illicit arrangement, the Petersons obtained more than $95,000 in personal secret profits.

42.    Bell Peterson knew or should have known that she held a significant position with ETSG, including a significant financial interest in ETSG, and that her position and financial interest would be of great importance to ACS in the management of its affairs. Bell

Peterson also knew or should have known that ACS's policies prohibited self-dealing and conflicts of interest among employees, and that a conflict of interest existed for Bell Peterson given her dual roles with ACS and ETSG, a conflict she deliberately failed to disclose to ACS, to ACS's detriment and disadvantage.

43.     At the time ACS paid the ETSG invoices submitted by Bell Peterson, it was unaware of her false and fraudulent conduct, and believed Bell Peterson's representations concerning ETSG and the ETSG contract to be true. As a direct and proximate result of Bell Peterson's deception, ACS was induced to rely upon Bell Peterson's representations, and was induced to and did pay the ETSG invoices in an amount that exceeds $300,000. Had ACS known the actual facts about Bell Peterson and ETSG, it would not have taken such action.

44.     At the time ACS made payments to EITS and ASIAM for their consulting services, it was unaware of Bell Peterson's kickback scheme and that Bell Peterson had secretly and intentionally used her position as an employee and agent for ACS to obtain profits for herself rather than to act in the best interests of ACS. As a direct and proximate result of Bell Peterson's deceptive conduct, ACS was induced to and did pay fees to EITS and ASIAM that enriched Bell Peterson personally at ACS's detriment and disadvantage. ACS would not have paid certain amounts to EITS and ASIAM had it known these amounts were being kicked back to Bell Peterson. Due to Bell Peterson' efforts to hide this scheme, ACS did not discover the kickback scheme until July 2007.

45.     As a result of the fraudulent and disloyal conduct described throughout this first amended complaint, the individual defendants collected unearned and unjustified profits, including but not limited to, undue payments made to ETSG, inappropriate wages and other compensation paid in connection with ETSG, personal use of funds misappropriated from ACS

13

and ETSG, kickback payments to EITS and ASIAM, and, specific to Bell Peterson, undue wages and other compensation paid in direct connection with her employment position at ACS.

46.     On or around January 20, 2007, ACS discovered Bell Peterson's multiple schemes to defraud the organization. That week, Bell Peterson resigned from her employment. At the time of her resignation, ACS management instructed Bell Peterson to return all ACS property that she had in her possession or control.

47.     As of the date of this first amended complaint, Bell Peterson has refused to return one ACS laptop computer and other ACS property within her possession or control, in clear defiance of repeated demands from ACS for the return of said property.

48.     In the weeks following her resignation, Bell Peterson transferred to herself, Alvin Peterson, and Hunt a minimum of $33,000 remaining in ETSG accounts, which the Petersons and Hunt deposited into their personal bank accounts or converted into cash, each knowing the funds were fraudulently and unlawfully obtained from ACS. Upon information and belief, the Petersons and Hunt transferred or received the remaining funds for purposes of hiding the true source of the funds, concealing and covering up the fraud perpetrated upon ACS, evading liability, and allowing the defendants to continue using the funds for personal gain.

## COUNT I

### VIOLATION OF TITLE 18 UNITED STATES CODE SECTION 1962(c) (CIVIL RICO)

#### (against Nekol Bell Peterson)

49.     The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

50.     ETSG is a corporation that constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).

51.    Bell Peterson is an individual capable of holding a legal or beneficial interest in property and is a person within the meaning of 18 U.S.C. § 1961(3).

52.    From at least November 2005 and continuing through January 2007, Bell Peterson did unlawfully, knowingly, and intentionally conduct and participate, directly and indirectly, in the conduct, management, and operation of the affairs of ETSG, which was engaged in, and the activities of which, affected interstate commerce, through a pattern of racketeering activity consisting of numerous acts of racketeering in the District of Columbia indictable under 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), and including the acts of racketeering alleged in this complaint.

53.    From at least November 2005 and continuing through January 2007, Bell Peterson did knowingly devise and intend to devise multiple schemes and artifices to defraud, and obtain money and property, from ACS by means of material false and fraudulent acts, pretenses, representations, and omissions of fact, knowing that the acts, pretenses, representations, and omissions of fact were false when made.

54.    It was part of said schemes and artifices that Bell Peterson would and did commit multiple predicate acts of mail fraud by directing and causing ACS, in detrimental reliance upon Bell Peterson's material false and fraudulent pretenses, representations, and omissions of fact, to deposit with and be delivered by the U.S. Postal Service certain and numerous payment checks which were based upon false and fraudulent time sheets and invoices generated by Bell Peterson with the intent of defrauding ACS.

55.    It was a further part of said schemes and artifices that Bell Peterson would and did commit predicate acts of wire fraud by directing and causing ETSG to transmit corporate funds gained from the scheme to defraud ACS from ETSG's corporate bank account to Bell

15

Peterson's private bank account and the accounts of friends and family members, all for their personal use and profit, and for the purpose of hiding said funds.

56.    It was a further part of said schemes and artifices that Bell Peterson would and did misrepresent, conceal, hide and cause to be misrepresented, concealed and hidden for the purpose of, and acts done in furtherance of, the scheme to defraud ACS.

57.    It was a further part of said schemes and artifices that Bell Peterson and ETSG would communicate with each other by mail, e-mail, and wire facilities, in furtherance of the scheme to defraud ACS.

58.    For the purpose of executing and attempting to execute her multiple schemes and artifices, Bell Peterson would and did knowingly place and cause to be placed in any post office or authorized depository for mail certain matter, matters, and things to be sent and delivered by the U.S. Postal Service; took and received such matters and things; and knowingly caused to be delivered by mail according to her direction, and at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter and thing, in violation of 18 U.S.C. § 1341, including the acts alleged in this complaint.

59.    For purposes of executing and attempting to execute her multiple schemes and artifices, Bell Peterson would and did knowingly transmit in interstate commerce by means of wire communications, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme in violation of 18 U.S.C. § 1343, including the acts alleged in this complaint.

60.    Bell Peterson's multiple schemes and artifices constituted a pattern of related and continued predicate acts that extended over a substantial period of time from at least November 2005 through January 2007, and in any event more than a year, which acts constitute at least two predicate racketeering offenses over a ten year period as defined under 18 U.S.C. § 1965.

61.    Bell Peterson's multiple schemes and artifices victimized both ACS and its individual members, whose dues and fee payments are a significant source of income to ACS, and which income Bell Peterson appropriated for her own personal use and profit.

62.    As a direct and proximate result of Bell Peterson's unlawful actions, and by reason of violation of 18 U.S.C. § 1962, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, plus costs of suit and reasonable attorneys' fees.

63.    As a result of ACS's injuries caused directly by Bell Peterson's unlawful actions, ACS is entitled to treble damages under 18 U.S.C. § 1964(c).

## COUNT II

## BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY

### (against Nekol Bell Peterson)

64.    The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

65.    As an employee and agent of ACS, Bell Peterson owed fiduciary duties to ACS, including but not limited to duties of loyalty, full information and disclosure, and to act in ACS's best interest. These duties arose as a consequence of the employment and/or the specific entrustment by ACS in Bell Peterson to perform her duties and responsibilities in good faith and to refrain from engaging in self-dealing, conflicts of interest, placement of her interest above ACS's interest, and unauthorized acts on behalf of ACS that are adverse to ACS.

66.    Within the scope of Bell Peterson's employment, Bell Peterson had the trust, responsibility, and authority to engage in transactions on behalf of ACS for the purpose of furthering ACS's mission objectives and goals.

67.     Bell Peterson breached her duties to ACS in that she failed and refused to disclose material facts concerning the transactions she engaged in on behalf of ACS in connection with ETSG, EITS, and ASIAM; and failed and refused to disclose her participation in, management of, and control of ETSG, which presented a direct conflict of interest that she concealed and disregarded in order to deceive and defraud ACS.

68.     Bell Peterson breached her duties in that she failed and refused to refrain from self-dealing, and abused her job position for the sole advancement of her self-interest to the detriment and disadvantage of ACS, including but not limited to the approval and submission of ETSG invoices which she knew to be false, and obtaining kickback payments in exchange for hiring EITS and ASIAM as consultants to ACS.

69.     Bell Peterson personally profited from her breach of fiduciary duties to ACS by appropriating money from ACS for her own personal use and profit, and the profit of her spouse, friends, and relatives, and further obtaining consideration from ACS as wages for her employment at ACS, intentionally and actively concealing from ACS her self-dealing, conflicts of interest, and acts adverse to ACS, and further causing ETSG to damage ACS up to $40 per hour above what ETSG paid McLaren, and $20 per hour above what ACS would otherwise have paid EITS and ASIAM.

70.     As a direct and proximate result of Bell Peterson's unlawful actions, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, plus costs of suit and reasonable attorneys' fees.

71.     Bell Peterson is not entitled to any profits she obtained through her breach of duties and is not entitled to any compensation paid to her by ACS while in breach of her duties.

18

## COUNT III

## FRAUD

### (against ETSG, Nekol Bell Peterson, Matice Aaron Hunt, and Audrey McLaren)

72.     The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

73.     As an owner, incorporator, officer, and agent of ETSG, Bell Peterson's actions on behalf of ETSG are imputable to ETSG.  Furthermore, as alter egos of ETSG, Bell Peterson, Hunt, and McLaren are individually liable for any unlawful actions by ETSG.

74.     As an employee and agent of ACS, Bell Peterson is personally liable to ACS for her unlawful actions.

75.     On behalf of ETSG, and for her own personal benefit, Bell Peterson engaged in acts and made representations and omissions of fact relating to ETSG, the ETSG contract, and ETSG's invoices to ACS, as more specifically set forth in this first amended complaint.

76.     The acts and misrepresentations and omissions of fact constitute assertions of a false representation of a material fact to ACS.

77.     ETSG and Bell Peterson intended their material acts and misrepresentations and omissions of fact to deceive, mislead, and misinform ACS and to cause ACS to act and rely upon them.

78.     ETSG and Bell Peterson knew or should have known their material acts and representations were false at the time they were made, and knew or should have known their material acts and misrepresentations and omissions of fact would induce, and did induce, ACS to act and rely upon them.

19

79.     The material acts and misrepresentations and omissions of fact were reasonably relied upon by ACS, to the detriment and disadvantage of ACS, resulting in direct harm to ACS.

80.     The material acts and misrepresentations and omissions of fact constitute actual fraud and fraudulent inducement against ACS.

81.     The material acts and misrepresentations and omissions of fact were made with actual malice, oppressively and in a spirit of mischief, amounting to extreme overreaching, and such recklessness or gross negligence as to evince a conscious disregard of the rights of others.

82.     As a direct and proximate result of the defendants' unlawful actions, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, costs of suit and reasonable attorneys' fees.

83.     Due to the severity of the conduct herein alleged, ACS is entitled to punitive damages.

## COUNT IV

### NEGLIGENT MISREPRESENTATION

### (against ETSG, Nekol Bell Peterson, Matice Aaron Hunt, and Audrey McLaren)

84.     The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

85.     As an incorporator, officer, and agent of ETSG, Bell Peterson's actions on behalf of ETSG are imputable to ETSG. Furthermore, as alter egos of ETSG, Bell Peterson, Hunt, and McLaren are individually liable for any unlawful actions by ETSG.

86.     As an employee of ACS, Bell Peterson is personally liable to ACS for her unlawful actions.

87.     On behalf of ETSG, and for her own personal benefit, Bell Peterson made misrepresentations and omissions of fact relating to ETSG,  the ETSG contract, and ETSG's invoices to ACS, as more specifically set forth in this complaint.

88.     These misrepresentations and omissions of fact were material to ACS, and were innocently or negligently made with the intent that ACS would rely on them.

89.     ACS reasonably relied upon these misrepresentations and omissions of fact, to the detriment and disadvantage of ACS, resulting in direct harm to ACS.

90.     Bell Peterson and ETSG should have recognized that ACS would likely be imperiled by action taken in reliance upon their collective misrepresentations.

91.     As a direct and proximate result of the defendants' unlawful actions, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, costs of suit and reasonable attorneys' fees.

## COUNT V

## BREACH OF CONTRACT

### (against ETSG, Nekol Bell Peterson, Audrey McLaren, and Matice Aaron Hunt)

92.     The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

93.     The agreement executed between Bell Peterson, acting on behalf of ACS, and Audrey McLaren, acting on behalf of ETSG, constituted a contract.

94.     Under the terms of the contract, ETSG was obligated to invoice ACS only for services and work actually performed by McLaren.

95.     After execution of the contract, ETSG submitted invoices to ACS for services and work not performed in such a manner that caused ACS to pay false and fraudulent invoices, to the detriment and disadvantage of ACS.

96.    ETSG breached its contract with ACS.

97.    As a direct and proximate result of ETSG's unlawful actions, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, for which ETSG is liable.

98.    As the alter egos of ETSG, Bell Peterson, Hunt, and McLaren are individually liable for the unlawful actions of ETSG, and the amount in damages owed by ETSG for breach of contract.

<u>COUNT VI</u>

**<u>BREACH OF THE IMPLIED COVENANT<br>OF GOOD FAITH AND FAIR DEALING</u>**

**(against ETSG, Nekol Bell Peterson, Audrey McLaren, and Matice Aaron Hunt)**

99.    The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

100.    District of Columbia law implies in all contracts a duty of good faith and fair dealing. This duty prevents a party from evading the spirit of the contract, willfully rendering imperfect performance or interfering with the other party's performance.

101.    ETSG breached its duty of good faith and fair dealing by engaging in, or acquiescing to, multiple schemes to defraud ACS, and to deliberately and dishonestly manipulate its contract with ACS in an unreasonable, arbitrary and capricious manner that wholly evaded and destroyed the spirit of the bargain.

102.    As a result of ETSG's unlawful actions, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, plus costs of suit and reasonable attorneys' fees.

103.     As the alter egos of ETSG, Bell Peterson, Hunt, and McLaren are individually liable for the unlawful actions of ETSG, and the amount in damages owed by ETSG for breach of the implied covenant of good faith and fair dealing.

## COUNT VII

### UNJUST ENRICHMENT

### (against all defendants)

104.     The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

105.     ETSG, Nekol Bell Peterson, Alvin Peterson, and Matice Aaron Hunt have no legitimate interest in, or right to, the funds and property received or retained as a result of their fraudulent conduct and, therefore, in equity and good conscience, should not be allowed to retain such funds.

106.     As a result of their fraudulent conduct, or otherwise conspiring, assisting, or aiding and abetting the fraudulent conduct, the defendants should be required to return such funds, with prejudgment interest, and disgorge any profits they may have made from the use of such funds.

107.     As the alter egos of ETSG, Bell Peterson, Hunt, and McLaren are also individually liable for the unlawful actions of ETSG, and the amount in damages owed by ETSG for unjust enrichment.

## COUNT VIII

### CONVERSION

### (against Nekol Bell Peterson)

108.     The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

109.    At all times herein mentioned, and in particular in February 2007, ACS was, and still is entitled to the possession of its property, namely a laptop computer and other ACS property and documents issued to Bell Peterson incident to her employment with ACS.

110.    In January 2007, Bell Peterson took the above-mentioned property from ACS's possession and converted the same to her own use.

111.    In January 2007, ACS demanded the immediate return of the above-mentioned property but Bell Peterson failed and refused, and continues to fail and refuse, to return the property to ACS.

112.    As a proximate result of Bell Peterson's conversion, ACS suffered damages which are the natural, reasonable, and proximate results of the conversion.

113.    Between the time of Bell Peterson's conversion of the above-mentioned property to her own use and the filing of this action, ACS expended the time and money in the pursuit of the converted property, all to ACS's further damage.

114.    The aforementioned acts of Bell Peterson were taken with actual malice, oppressively and in a spirit of mischief, amounting to extreme overreaching, and such recklessness or gross negligence as to evince a conscious disregard of the rights of others, and justify the awarding of punitive damages.

## COUNT IX

### VIOLATION OF TITLE 18 UNITED STATES CODE SECTION 1962(d) (CONSPIRACY UNDER CIVIL RICO)

**(against the individual defendants)**

115.    The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

116.    From at least November 2005 and continuing through January 2007, in the District of Columbia and elsewhere, Nekol Bell Peterson, Alvin Peterson, Audrey McLaren, and Matice Aaron Hunt did unlawfully, knowingly and intentionally combine, conspire, agree, and adopt the goal of furthering and facilitating one or more of the others defendants' material participation in the affairs of the enterprise, ETSG, which was engaged in, and the activities of which, affected interstate commerce, through a pattern of racketeering activity consisting of multiple criminal acts indictable under 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), in violation of 18 U.S.C. 1962(d).

117.    It was part of said conspiracy that Bell Peterson, Alvin Peterson, McLaren, and Hunt did unlawfully, knowingly and intentionally act and agree to act to further and facilitate the objective of criminally defrauding ACS, and obtain money and property therefrom, by means of material false and fraudulent pretenses, representations, and omissions of fact, both orally and in writing, knowing that the pretenses and representations were false when made, including but not limited to creating, submitting, and securing payment from ACS on knowingly false and fraudulent invoices.

118.    It was further part of said conspiracy that Bell Peterson, Alvin Peterson, McLaren, and Hunt did unlawfully, knowingly and intentionally act and agree to act to further and facilitate the objective of criminally defrauding ACS, and obtain money and property therefrom, by transferring the unlawful proceeds gained from the pattern of racketeering activity from ETSG's account to their personal bank accounts, or convert the proceeds into cash, so as to disguise the true source of the funds, conceal the criminal fraud perpetrated upon ACS, and allow the defendants to continue using the funds for personal gain.

119.    It was further part of said conspiracy that Bell Peterson, Alvin Peterson, and Hunt did unlawfully, knowingly and intentionally act and agree to act to further and facilitate

the objective of criminally defrauding ACS, and obtain money and property therefrom, by creating and disseminating through the wires multiple false and fraudulent writings, including invoices, e-mail messages and false and fraudulent contracts, knowing the writings were false and intended to conceal from discovery the criminal fraud perpetrated upon ACS.

120.    As a direct and proximate result of the individual defendants' unlawful actions, and by reason of violation of 18 U.S.C. §1962(d), ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, plus costs of suit and reasonable attorneys' fees.

119.    As a result of ACS's injuries caused directly by the individual defendants' unlawful actions, ACS is entitled to treble damages under 18 U.S.C. 1964(c).

## COUNT X

## CONSPIRACY TO COMMIT FRAUD

### (against the individual defendants)

120.    The allegations in the foregoing paragraphs are incorporated herein as if fully alleged.

121.    At times material to this action, Nekol Bell Peterson, Alvin Peterson, Matice Aaron Hunt, and Audrey McLaren participated in a civil conspiracy among themselves, the general purposes of which were, *inter alia*, (1) to fraudulently deceive and mislead ACS concerning ETSG, its corporate structure and relationship to the individual defendants, as well as its contract with ACS and its work performed on behalf of ACS; (2) to commit or assist in the commission of fraud against ACS through multiple billing schemes spearheaded by Bell Peterson in her position as a Project Lead for ACS, and aided by Alvin Peterson, McLaren, and Hunt; (3) to unlawfully profit from the fraud perpetrated upon ACS by transferring the funds obtained from ACS into their personal bank accounts, and to misappropriate the funds for their own personal use;

and (4) to continue the fraud by concealing from discovery the illicit payments derived from Bell Peterson's multiple billing schemes, evade liability, and avoid having to account for their unlawful actions.

122.    During the course of the conspiracy, Bell Peterson, Alvin Peterson, Hunt, and McLaren engaged in numerous overt acts designed to advance and conceal the fraud, or their participation in the fraud, perpetrated upon ACS. This includes but is not limited to (1) making material false and fraudulent representations, both orally and in writing, including false and fraudulent invoices, knowing that the representations were false when made; (2) creating and disseminating through the wires false and fraudulent writings, including invoices, e-mail messages and false and fraudulent contracts, knowing the writings were false and intended to conceal from discovery the fraud perpetrated upon ACS; and (3) transferring or receiving ETSG funds from its corporate account into personal bank accounts, or converting the funds into cash, so as to hide the source of the funds and (4) concealing the fraud perpetrated upon ACS to allow one or more defendants continue using the funds for personal gain.

123.    Each overt act of the conspiracy was expressly or impliedly agreed to and ratified by the co-conspirators, who acted as each other's agents and derived personal profit from the acts of each other, in full knowledge that the acts were committed in furtherance of the fraud perpetrated upon ACS.

124.    As a direct and proximate result of the individual defendants' conduct, ACS has suffered, is suffering, and will continue to suffer substantial monetary damages, plus interest, past pecuniary expenses, future pecuniary expenses, plus costs of suit and reasonable attorneys' fees.

125.    Each individual defendant is jointly and severally liable for the torts of the other members of the conspiracy, which were committed in furtherance of the goals of the conspiracy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in its favor and against defendants, providing the following relief:

a.    Actual, compensatory, and consequential damages against defendants collectively in an amount no less than $350,000 or as proved at trial, plus interest;

b.    Treble damages against the individual defendants as a result of the violations alleged under Count I and Count IX;

c.    The value of all property converted, plus interest, and damages for time and money properly expended in pursuit of the converted property, against Nekol Bell Peterson individually;

d.    Disgorgement by each individual defendant of all profits in an amount equal to the funds and benefits obtained by defendants illegally as a result of the violations alleged herein, plus interest on that amount;

e.    Return by Nekol Bell Peterson of all compensation paid by ACS after November 7, 2005 in an amount no less than $100,000;

f.    Punitive damages in an amount of $400,000 against each defendant, separately and individually;

g.    Attorneys' fees and costs; and

h.    Such other and further relief as this Court may deem proper.

Respectfully submitted,

JACKSON LEWIS LLP

Dated: September ___, 2007          By:  _____

John M. Remy (D.C. Bar No. 461244)
Jennifer A. Harper (D.C. Bar No. 502828)
8614 Westwood Center Drive
Suite 950
Vienna, Virginia 22182
(703) 821-2189
(703) 821-2267 Facsimile
remyj@jacksonlewis.com
harperj@jacksonlewis.com

ATTORNEYS FOR PLAINTIFF